UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

EDWARD PERREY,                          )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )    CIVIL NO. 3:06cv617
                                        )
J. DAVID DONAHUE, et al.,               )
                                        )
        Defendants.                     )

OPINION AND ORDER

This matter is before the court on four motions for summary judgment, two motions to

strike, and one motion for extension of time[1].  The motions are as follows:

1.    DE 85 – Motion for summary judgment filed by defendant Connie Morrow
      ("Morrow") on May 8, 2009.  Plaintiff Edward Perrey ("Perrey"), proceeding pro
      se, filed his response on November 2, 2009, to which Morrow replied on November
      20, 2009.

2.    DE 89 – Motion for summary judgment filed by defendants J. David Donahue, Dr.
      Elton Amos, William Wilson, Andrew Pazera, and Sharon Hawk ("State
      Defendants"), on May 11, 2009.  Perrey, proceeding pro se, filed a response on
      November 2, 2009, to which the State Defendants replied on November 30, 2009.

3.    DE 114 – Cross-motion for summary judgment filed by Perrey, proceeding pro se,
      on November 2, 2009 against defendant Morrow.  Morrow responded to the motion
      on November 18, 2009, and Perrey has declined to file a reply.

4.    DE 119 – Cross-motion for summary judgment filed by Perrey, proceeding pro se,
      on November 2, 2009 against the State Defendants.  The State Defendants
      responded to the motion on November 30, 2009, and Perrey has declined to file a
      reply.

5.    DE 138 – Motion to strike portions of Perrey's response to summary judgment

---

[1]  On November 24, 2009, the State Defendants filed a "Motion for Leave to File Motion to
Strike Instanter".  This motion was granted in an order entered February 16, 2010.  Thus, Perrey's
motion to strike the State Defendants' motion for leave to file [DE 146] is deemed moot.
Likewise, Perrey's motion to strike the State Defendants' response to his motion to strike [DE
156] is also deemed moot.

motion, filed by Morrow on November 20, 2009. Perrey responded to the motion on December 14, 2009 and Morrow has declined to file a reply.

6.      DE 161 – Motion to strike portions of Perrey's affidavit, his verified responses to the State Defendants' declarations, his statement of genuine issues, as well as his statement of material facts not in dispute, filed by the State Defendants on February 16, 2010.[2]  Perrey filed an objection to this motion on March 1, 2010[3].

7.      DE 145 – Motion for Extension of Time to Respond with Newly Discovered Evidence, filed by Perrey on December 14, 2009.  Morrow responded to the motion on December 17, 2009 and Perrey has declined to file a reply.

<u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  <u>Fitzpatrick v. Catholic Bishop of Chicago</u>, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient

---

[2] Due to the late filing of this motion, Perrey has not responded.  However, Perrey has submitted several filings relating to the motion to strike in response to the motion for leave to file the motion to strike, including his own motion to strike.  The court has considered these filings.

[3] Perrey has objected to this court's order granting the State Defendants' Motion for Leave to File Motion to Strike Instanter.  The court finds the objection to be not well-taken.

to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment

motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

<u>Discussion</u>

The court will first address Morrow's motion for summary judgment. The following facts

4

are relevant to the motion and are supported by the record.  At all times relevant to his Complaint, Perrey was incarcerated at the Westville Correctional Facility.  At the time of Morrow's motion, Perrey was incarcerated in the Steuben County Jail.

Perrey filed his Complaint on September 28, 2006 against 20 different defendants, alleging violations of his Eighth Amendment rights under 42 U.S.C. §1983 and violations of state law for the denial of medical treatment. After screening the Complaint, this Court issued an Order on December 3, 2007, dismissing the majority of the defendants and allowing Perrey to proceed against the remaining defendants on his Eighth Amendment and state law claims for denial of medical treatment.

In Perrey's 18-page Complaint, he alleges that the defendants denied him medical treatment for his Hepatitis C from June 14, 2005 to the time he filed his Complaint on September 28, 2006.  Perrey claims that the alleged denial of medical care resulted in damage to his liver. However, the Complaint does not contain any specific allegation against Morrow, nor does it even mention  Morrow by name in the body of the Complaint. In his Answers to Morrow's Interrogatories, Perrey alleges that Morrow failed "to facilitate the scheduling and completion of a liver biopsy."

Morrow was the Health Services Administrator at the Westville Correctional Facility from November 2003 to June 30, 2006. Morrow was not a healthcare provider at the Westville Correctional Facility and did not treat offenders or render any medical care to offenders. As Health Services Administrator, Morrow hired medical staff, maintained the nursing staff schedule, handled human resources issues involving the medical staff, ordered medical supplies for the facility, and responded to offender grievances regarding medical issues.

Morrow had no involvement in treatment decisions for inmates and had no involvement

in determining the course of an offender's medical care, including whether an offender needed or would receive outside testing or procedures. Morrow was not involved in the process of scheduling offenders for outside treatment or procedures. Neither Morrow nor anyone else at the Westville Correctional Facility had any control over when offenders would be scheduled at an outside hospital for a liver biopsy. When an offender at the Westville Correctional Facility needed to have outside testing or a procedure, the medical secretary or scheduling assistant first received a consultation request from the treating physician. The consultation request was then faxed to the corporate office of either Prison Health Services or Correctional Medical Services and the medical secretary or scheduling assistant waited for a response before scheduling the appointment. Once approval was received, the medical secretary or scheduling assistant called or faxed the outside hospital to inform them of the need for a test or procedure. The outside hospital then scheduled the appointment and called the medical secretary or scheduling assistant to inform her of the date and time of the appointment. For non-emergency situations, it typically took anywhere from several weeks to several months to schedule an offender at an outside hospital, depending on the hospital's schedule.

While Perrey was at the Westville Correctional Facility, he was under the care of Dr. Oliver Crawford, Dr. Jill Wahl, Nurse Practitioner Barbara Brubaker, and Dr. Okafur. Morrow had no authority and did not exercise control over these healthcare providers in their treatment and medical care of Perrey. Perrey had a liver ultrasound on March 23, 2005. On September 27, 2005, Nurse Practitioner Barbara Brubaker ordered a liver biopsy for Perrey. On November 14, 2005, Nurse Practitioner Barbara Brubaker ordered lab work and a gastroenterology consult at Wishard Hospital. On March 31, 2006, Dr. Oliver Crawford ordered that Perrey to be sent to the gastroenterologist at Wishard Memorial Hospital for a liver biopsy. On April 4, 2006, Correctional

Medical Services Medical Director Dr. Ken Richmond determined that the request for a liver biopsy met medical criteria and should be scheduled.

On May 3, 2006, medical staff informed Perrey that all the paperwork for his liver biopsy was sent to Wishard Hospital on April 7, 2006 and that they were waiting for an appointment from Wishard. The medical secretary called Wishard and learned that Perrey had to be seen in the Gastroenterology Clinic before he could have a liver biopsy. A visit to the Gastroenterology clinic was scheduled for June, 2006. On June 7, 2006, a nurse informed Perrey that his liver biopsy was approved and they were waiting for an appointment from Wishard Hospital. On July 10, 2006, Nurse Practitioner Barbara Brubaker submitted a consultation request for a liver ultrasound and biopsy. On July 11, 2006, Correctional Medical Services determined the request for a liver ultrasound and biopsy met criteria and Medical Director Dr. Richmond noted that "this met criteria on April 4, 2006, please schedule." Perrey received a liver ultrasound and biopsy at St. Anthony Hospital on October 31, 2006 and began Hepatitis C treatment on November 20, 2006.

In support of her motion for summary judgment, Morrow first argues that she was not deliberately indifferent to Perrey's serious medical needs because she was not personally involved in the alleged violation. It is well-established that deliberate indifference to a serious medical need cannot be established based on the theory of respondeat superior. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001); Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993). To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right. Chavez, 251 F.3d at 651; Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981). The personal responsibility requirement is satisfied "if the official acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction

or with her knowledge and consent." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). "Only persons who cause or participate in the [Constitutional] violations are responsible." George v. Smith, 507 F. 3d 605, 609 (7th Cir. 2007). A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains. Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996).

Perrey claims that Morrow was deliberately indifferent to his serious medical needs because she "did not facilitate" the scheduling of a liver biopsy. However, as Morrow has explained in her Affidavit, she was not responsible for scheduling offenders for outside appointments. In fact, Morrow had no direct involvement with Perrey's medical care at all. As Health Services Administrator, Morrow ordered supplies, maintained the nursing staff schedule, dealt with human resources issues, hired medical staff, and responded to offender grievances regarding medical issues. She did not treat offenders and did not participate in treatment decisions. Morrow had no decision-making authority nor any involvement whatsoever in scheduling or sending offenders out of the facility for medical appointments or to see specialists; this was the job of the medical secretary or the scheduling assistant and the physicians treating Perrey. Perrey was under the care of three different physicians and a nurse practitioner during his stay at the Westville Correctional Facility. The course of Perrey's treatment was determined by those healthcare providers. The only evidence before the court is that Morrow had only a supervisory role over the medical staff and did not exercise authority or control over the nurse practitioners and physicians who treated Perrey. Thus, as Morrow argues, there was no way for her to "facilitate" the scheduling of Perrey's liver biopsy.

Morrow further argues that she did not act with "deliberate indifference" to Perrey's medical needs. However, as Morrow points out, even if facts existed to suggest that Morrow

personally participated in Perrey's medical care, deliberate indifference to a serious medical need is an extremely high standard, and one that Perrey cannot meet. The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the States, through the Fourteenth Amendment, to provide adequate medical care to incarcerated individuals. Boyce v. Moore, 314 F.3d 884, 888-889 (7th Cir. 2002), citing Estelle v. Gamble, 429 U.S. 97, 103 (1976). A prisoner is not entitled to unqualified access to healthcare. Boyce v. Moore, 314 F.3d at 888-889. In addition, a prisoner cannot demand specific care and is not entitled to the best possible care. Johnson v. Doughty, 433 F.3d. 1001, 1013 (7th Cir. 2006); Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999).

Prison officials violate an inmate's Eighth Amendment rights if they act with "deliberate indifference" to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976).  To establish deliberate indifference, a plaintiff must prove two elements, one objective and one subjective. The plaintiff has the burden of demonstrating that "(1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to his health or safety." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005); Farmer v. Brennan, 114 S. Ct. 1970 (1994).

"Deliberate indifference" means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. James v. Milwaukee County, 956 F.2d 696, 700 (7th Cir. 1992). To be deliberately indifferent, the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Pinkston v. Madry, 440 F.3d at 879; Farmer v. Brennan, 511 U.S. at 837. Deliberate indifference only occurs if the defendant knows of and disregards an excessive risk to inmate health or safety. Greeno v. Dailey, 414 F.3d

645, 654 (7th Cir. 2005); <u>Estate of Cole v. Fromm</u>, 94 F.3d at 258-259. Deliberate indifference

must be a conscious disregard of known or obvious dangers. <u>Board v. Farnham</u>, 394 F.3d at

394.

   To be deliberately indifferent, defendants must act with a sufficiently culpable state of

mind. <u>Farmer v. Brennan</u>, 114 S. Ct. at 1981; <u>Steading v. Thompson</u>, 941 F.2d 498, 500 (7th Cir.

1991), cert. denied, 112 S. Ct. 1206 (1992). A culpable state of mind, or subjective intent, may

be established by showing that the defendant had actual knowledge of impending harm that was

easily preventable, such that conscious refusal to prevent the harm can be inferred from the

defendant's failure to prevent it or showing that a defendant deliberately avoided acquiring

knowledge of impending harm. <u>Jackson v. Duckworth</u>, 955 F.2d 21, 22 (7th Cir. 1992); <u>Patrick

v. Staples</u>, 780 F. Supp. 1528 (N.D. Ind. 1991). Deliberate indifference is a synonym for

intentional or reckless conduct; reckless conduct so dangerous that the deliberate nature of the

defendant's action can be inferred. <u>Foelker v. Outagamie County</u>, 394 F.3d, at 513. The

defendant must know of the serious risk to the prisoner's health, <u>i.e.</u> the serious medical need at

issue, and he or she must also consciously disregard that risk/need so as to inflict cruel and

unusual punishment upon the prisoner. <u>Farmer v. Brennan</u>, 511 U.S. at 837-838. To be

deliberately indifferent, the defendant must act with reckless disregard toward the inmate's

serious need by inaction or woefully inadequate action. <u>Reed v. McBride</u>, 178 F.3d 849, 854 (7th

Cir. 1999). The defendant must have known that the prisoner was at serious risk of being harmed

and decided not to do anything to prevent that harm from occurring even though he could have

easily done so. <u>Board v. Farnham</u>, 394 F.3d at 478. Deliberate indifference is "something

approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a

conscious, culpable refusal to prevent harm. <u>Duane v. Lane</u>, 959 F. 2d 673, 677 (7th Cir.1992).

This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

Medical malpractice, negligence, or even gross negligence do not constitute deliberate indifference, nor does dissatisfaction or disagreement with a doctor's course of treatment. Johnson v. Doughty, 433 F.3d. at 1013; Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002); Dunnigan v. Winnebago County, 165 F.3d 587, 592 (7th Cir. 1999); Goka v. Bobbit, 862 F.2d 646, 650 (7th Cir. 1988). Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference. Estate of Cole v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996).

Morrow does not dispute that Hepatitis C is a serious medical condition. However, Morrow contends that she was not deliberately indifferent to that medical need. Rather, Perrey's medical condition was treated and monitored by the doctors and the nurse practitioner at the Westville Correctional Facility. Those healthcare providers determined whether Perrey needed a liver biopsy and when he needed a liver biopsy. Once it was determined that Perrey needed a liver biopsy, it was the responsibility of the medical secretary or scheduling assistant to coordinate that appointment with the outside hospital's schedule. Perrey merely disputes the timing of this access to the specific care he wanted, when he wanted it. As Health Services Administrator, Morrow had no involvement with or input in that process. Morrow contends that based upon the undisputed facts, no trier of fact could determine that she was deliberately indifferent to Perrey's medical condition.

Morrow argues that Perrey is not entitled to demand specific care under the Eighth Amendment. Johnson v. Doughty, 433 F.3d. 1001, 1013 (7th Cir. 2006); Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999). Therefore, Perrey cannot succeed on a deliberate indifference

claim based on the fact that he thinks he should have received a liver biopsy sooner than he did or because he thinks he has suffered liver damage as a result of the timing of his liver biopsy. Clearly, Perrey is not a physician and has no medical training. Thus, he is not qualified to make medical judgments or render medical opinions about the proper course of treatment for his medical condition.

Morrow next argues that she was not negligent in her role as Health Services Administrator. In a negligence action, the plaintiff must prove three elements: a duty owed to the plaintiff, a breach of duty by the defendant, and that the breach proximately caused the plaintiff's damages. Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991). Negligence cannot be inferred, but must be demonstrated by specific, factual evidence, or reasonable inferences from that evidence. Hayden v. Paragon Steakhouse, 731 N.E.2d 456 (Ind. Ct. App. 2000). In addition, negligence cannot be inferred from the mere fact of an accident, and causation cannot be inferred simply because of the existence of an allegedly negligent condition. Kincade v. MAC Corporation, 773 N.E.2d 909 (Ind. Ct. App. 2002). The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. Colen v. Pride Vending Service, 654 N.E.2d 1159, 1163 (Ind. Ct. App. 1995). A plaintiff is required to cite to specific facts that demonstrate negligence in order to withstand summary judgment. Hayden v. Paragon Steakhouse, 731 N.E.2d 456, 459 (Ind. Ct. App. 2000).

Morrow argues that Perrey has not shown that she breached her duty as Health Services Administrator or that anything she did or failed to do was the proximate cause of the alleged delay in scheduling Perrey's liver biopsy. Morrow contends that all evidence is to the contrary. Morrow argues that it was not her duty to determine whether Perrey needed a liver biopsy and that it was not her duty to schedule the livery biopsy. In fact, Morrow had no involvement with this

process whatsoever. Morrow further contends that Perrey has also failed to show that Morrow's action or inaction was the proximate cause of his alleged liver damage. Expert testimony regarding causation is not required in those cases where an injury is objective in nature. However, when the injury is subjective in nature and the issue of causation is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary. <u>Daub v. Daub</u>, 629 N.E.2d 873, 878 (Ind. Ct. App. 1994). Further, "a plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. Evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict." <u>City of East Chicago v. Litera</u>, 692 N.E.2d 898, 901 (Ind. Ct. App. 1998). In this case, Perrey's alleged damage is liver failure. Whether Perrey has liver damage which could have been avoided through earlier treatment is a complicated medical issue for which the testimony of a physician is required to establish causation. <u>Top v. Leffers</u>, 838 N.E.2d 1027, 1032-1033 (Ind. Ct. App. 2005); <u>Daub</u>, 629 N.E.2d at 878. Perrey must provide expert medical testimony, rather than his own beliefs, that the delay in receiving a liver biopsy caused him physical harm. Obviously, Perrey's own testimony that he needed a liver biopsy sooner or that he has suffered liver damage is insufficient to create a triable issue of fact as to whether Connie Morrow was negligent. Therefore, it is abundantly clear that Perry has failed to satisfy either the breach or the proximate cause element of his claim and his negligence claim  fails as a matter of law.

Before fully discussing Perrey's response to Morrow's motion for summary judgment, the court must first consider Morrow's motion to strike portions of Perrey's response.  Morrow has moved to strike paragraphs 7, 10, and 12-13 of the Affidavit of Edward Perrey, attached as Exhibit 4 to Perrey's response.  In paragraph 7, Perrey states that Morrow was responsible to "enforce and/or oversee compliance of all Correctional Medical Services ("CMS") and Indiana Department

of Correction ("IDOC") policies and procedures."   Morrow argues that Perrey has not provided

any basis on which it can be concluded that Perrey has personal knowledge of Morrow's job

responsibilities.  Morrow points out that she has explained her job responsibilities in her Affidavit

and has not stated that she was responsible for overseeing or enforcing CMS or IDOC policies.

Clearly, Morrow is correct on this point.  Perrey has not shown a personal knowledge of Morrow's

job responsibilities and paragraph 7 of his Affidavit will be stricken.

In paragraph 10 of his Affidavit, Perrey states that "Morrow had or should have had

personal knowledge of my medical concerns."  Morrow argues that Perrey has no personal

knowledge of what Morrow had personal knowledge of and only speculates as to what Morrow

should have had personal knowledge.  Again, Morrow is correct and paragraph 10 of Perrey's

Affidavit will be stricken.

In paragraph 12 of his Affidavit, Perrey states, "Morrow should have made sure that this

order was expedited by scheduling an appointment at some other facility that could accommodate

this procedure".  Morrow argues that this statement is speculation and an opinion about what he

thinks Morrow should have done.  Clearly, the statement is not a statement of fact of which Perrey

has shown he has personal knowledge.  Thus, paragraph 12 will be stricken.

Morrow has also requested that paragraph 13 of Perrey's affidavit be stricken.  In

paragraph 13, Perry states that Morrow was the immediate supervisor of Dr. Oliver Crawford,

Nurse Practitioner Barbara Brubaker, Dr. Jill Wahl, and Dr. Okafur, and that Morrow was the

grievance specialist at the Westville Correctional Facility.  Perrey further states in his affidavit that

Morrow was responsible for making sure all of these individuals did their jobs, because she hired

them.   Morrow argues that Perrey has not shown that he has any personal knowledge of Morrow's

job responsibilities.  Again, Morrow is correct and paragraph 13 will be stricken.

Next Morrow requests that Perrey's designated Exhibits 7a and 7b, which purport to be grievance records and medical records, be stricken.  Morrow points out that these documents are not authenticated and are therefore inadmissible pursuant to Rule 901 of the Federal Rules of Evidence.  As it is clear that the documents at issue are not authenticated, they will be stricken.

Morrow further moves to strike paragraphs 1-7 of Perrey's Statement of Genuine Issues. Paragraph 1 of Perrey's Statement of Genuine Issues states that Morrow had personal knowledge of Perrey's difficulty obtaining medical treatment.  Morrow points out that Perrey has no personal knowledge of what Morrow was aware of and thus this statement is inadmissible under Rule 602 of the Federal Rules of Evidence.  Paragraph 2 of Perrey's Statement of Genuine Issues states that it was within Morrow's job as Health Services Administrator to "enforce and/or oversee compliance of all Correctional Medical Services ("CMS") and Indiana Department of Correction ("IDOC") policies and procedures concerning their medical policies and procedures."   Morrow argues that Perrey has not shown that he has any personal knowledge of what Morrow's job responsibilities were.  Paragraph 3 of Perrey's Statement of Genuine Issues contains several statements about Morrow's job responsibilities and what they included.  Again, Morrow points out that Perrey has not made any showing that he has personal knowledge of Morrow's job responsibilities.  As it is clear that the Paragraphs at issue are not based on personal knowledge, they will be stricken.

In Paragraph 4 of Perrey's Statement of Genuine Issues, Perrey states that unidentified individuals told Perrey that he needed a liver biopsy to obtain Hepatitis C treatment.  Morrow argues that this statement is hearsay and is inadmissible under Rule 802 of the Federal Rules of Evidence. Again, Morrow is correct, and Paragraph 4 will be stricken.

Paragraph 5 of Perrey's Statement of Genuine Issues states that "Morrow had a duty to

resolve this issue as the HSA/supervisor/grievance specialist. Morrow had or should have had personal knowledge of Plaintiff's medical complaints." Morrow argues that Perrey has not shown that he has any personal knowledge of Morrow's job responsibilities and thus the paragraph should be stricken pursuant to Rule 602 of the Federal Rules of Evidence. Paragraph 6 of Perrey's Statement of Genuine Issues states several things that Morrow should have done in her role as Health Services Administrator. Morrow argues that the statement should be stricken because it is speculation and an opinion about what Perrey thinks Morrow should have done and is not a statement of fact of which Perrey has shown he has personal knowledge. Paragraph 7 of Perrey's Statement of Genuine Issues states that Morrow failed to perform her job duties. Morrow argues that because Perrey has not made a proper showing that he has personal knowledge of Morrow's job duties, he cannot render opinion testimony that Morrow failed to perform her duties. Morrow is correct and Paragraphs 5-7 will be stricken.

The court will now consider Perrey's response to Morrow's motion for summary judgment. Perrey first argues that Morrow failed to respond to his grievances. Perrey states that "[t]hese grievances should have been answered by Morrow, but instead were handled by Executive Director, Martha Black, who is an IDOC employee. Obviously, Morrow was neglecting her duties when she didn't answer the plaintiffs' [sic] grievances." Clearly, however, there is no evidence that Morrow was responsible for personally answering grievances. Although Perrey claims that Morrow was "the grievance specialist", that claim is not supported by the record. In any event, as Morrow points out, Perrey has not shown that any failure on the part of Morrow to personally answer his grievances had any effect on his medical care. The record shows that Perrey was being treated by several doctors and a nurse practitioner while he waited for a liver biopsy at Wishard Hospital. Thus Perrey has not established that Morrow was somehow negligent or deliberately

indifferent.

Perrey argues that "[t]here is obviously a conflict here between which defendants' [sic] are responsible for supplying medical care to offenders... which leaves substantial conflict for a Jury and/or the Court to untangle." However, as Morrow points out, the evidence plainly shows that Correctional Medical Services, Inc. was responsible for Perrey's medical care, but when an offender such as Perrey needed an outside appointment for testing, Wishard Hospital scheduled that appointment then communicated the appointment date to medical staff at the prison.

Perrey further claims that Morrow turned a "blind eye" to the alleged fact that the medical staff was not taking necessary steps to treat him and have him tested. This claim is not supported by the evidence as the evidence shows that Perrey was treated by several doctors and a nurse practitioner, who determined his course of treatment. That course of treatment included a biopsy at Wishard Hospital, which was scheduled and took place. Although it is clear that Perrey would have liked to have received a liver biopsy sooner than he did, the law clearly states that disagreement and dissatisfaction with medical care is insufficient to establish a violation of Section 1983. Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002); Dunnigan v. Winnebago County, 165 F.3d 587, 592 (7th Cir. 1999); Goka v. Bobbitt, 862 F.2d 646, 650 (7th Cir. 1988).

Next, Perrey argues that Morrow maintained policies that delayed his medical care. However, as Morrow points out, Perrey has failed to present any admissible evidence to support his argument. Perrey has also argued that Morrow failed to properly train her staff. Again, however, Perrey fails to present evidence that Morrow trained staff and that such training (or lack of it) had a direct effect on his medical care.

With respect to his state law negligence claim against Morrow, Perrey claims that "Morrow should have acted differently". Perrey has not shown the court how any alleged

negligence by Morrow proximately caused his alleged liver damage.  Therefore, summary judgment will be granted in favor of Morrow on Perrey's state law claim as well.

Perrey has filed a cross-motion for summary judgment against Morrow in which he summarily asserts that "[t]here are no genuine issues of material fact in this case and as such, the plaintiff is entitled to summary judgment as a matter of law."  As discussed above, however, the admissible evidence in this case plainly shows that Morrow, and not Perrey, is entitled to summary judgment.  Therefore, Perrey's motion for summary judgment will be denied.

The court will now turn to the State Defendants' motion for summary judgment.  Perrey has asserted that the State Defendants denied him access to proper medical care for his Hepatitis C.  The State Defendants assert that the following facts are not in dispute, which facts are supported by relevant affidavits and declarations.  As noted, at all times relevant to Perrey's complaint, Perrey was incarcerated at Westville Correctional Facility in Westville, Indiana. During the time relevant to the complaint, the following defendants were employees at Westville Correctional Facility: Sharon Hawk, Industrial Complex Director; Andrew Pazera, Assistant Superintendent of Reentry; and John Schrader, Program Director II.

Dr. Elton Amos was the State Medical Director with the Indiana Department of Correction, Central Office.  J. David Donahue was the Commissioner of the Indiana Department of Corrections.  William Wilson was the Assistant Superintendent of Programs at Westville Correctional Facility until April of 2005.

During the time relevant to the Complaint, Perrey complained to defendant Hawk about being denied medical treatment for his Hepatitis C.  In responding to Perrey's requests, defendant Hawk contacted medical staff and referred Perrey to them. Defendant Hawk had no further involvement in Perrey's treatment for his Hepatitis C.  Perrey also complained to defendant

Schrader about having to obtain a medical referral before being placed in a substance abuse program. Defendant Schrader advised Perrey that, because he had Hepatitis C, he had to obtain a medical referral before defendant Schrader could approve Perrey's admission into a substance abuse program. He also referred Perrey to the appropriate DOC procedures and proper staff members for an investigation into his claims. Perrey did not return to defendant Schrader with the proper medical referral. As Program Director II, defendant Schrader did not have the authority to admit offenders with Hepatitis C into a substance abuse program without first receiving the proper medical referral for the offender.

Defendants Amos, Wilson, Donahue, and Pazera do not recall receiving a complaint from the plaintiff about the denial of medical treatment for Hepatitis C. On or after September 1, 2005, Correctional Medical Services ("CMS") became responsible for the medical care of offenders in custody of the DOC and throughout all DOC facilities, including WCF. CMS employs doctors, nurse practitioners, registered nurses, licensed practical nurses, and others who work at the DOC's correctional facilities including Westville Correctional Facility.

CMS also has a medical director who provides oversight to CMS medical staff and assists in making diagnoses and treatment recommendations. CMS employees make diagnoses, order treatment, and provide treatment for offenders. DOC has not employed medical professionals to provide direct medical care for offenders since on or after September 1, 2005.

Defendants Amos and Donahue were not responsible for making diagnosis, ordering treatment, or providing treatment for individual offenders housed within the DOC including those individuals housed at Westville Correctional Facility.

Defendants Hawk, Schrader, Pazera, and Wilson had no authority to suggest or order specific medical treatments for offenders housed at Westville Correctional Facility. Defendants

Hawk, Pazera, Schrader, and Wilson had no authority to implement, modify, or otherwise create policies related to medical treatment for offenders, specifically, the treatment of Hepatitis C at Westville Correctional Facility. Perrey claims that Indiana Department of Correction Health Care Services Directive 3.09 mandates certain treatment for offenders suffering from Hepatitis C. Defendants Pazera and Schrader are familiar with Indiana Department of Correction Health Care Services Directive 3.09 but are not responsible for implementing the directive or overseeing compliance with the directive.

While defendant Amos is familiar with Department of Correction Health Care Services Directive 3.09, oversees compliance with it, and can recommend changes in health policies including those affecting the treatment of offenders with Hepatitis C, he does not have the authority to implement, modify, or otherwise create policies related to the treatment of Hepatitis C without the approval of the Commissioner.

Defendant Wilson is familiar with Indiana Department of Correction Health Care Services Directive 3.09 but is not responsible for its implementation. Defendants Hawk and Donahue are unfamiliar with Indiana Department of Correction Health Care Services Directive 3.09 and are not responsible for overseeing compliance with the directive or implementing the directive.  None of the defendants are responsible for the implementation of Indiana Department of Correction Health Care Services Directive 3.09.

Based upon the defendants' routines and customs, any communications directed toward them about an offender's denial of medical treatment for Hepatitis C or an offender's inability to be placed into a substance abuse program due to Hepatitis C would have been forwarded to the appropriate staff member for investigation. All of the defendants deny that they would ignore any instance in which they were aware of facts that led them to believe that an offender was being

20

denied access to proper medical treatment for Hepatitis C.   Additionally, all of the defendants

deny that they would keep themselves intentionally unaware of facts concerning an offender's

concerns about access to medical care in order to avoid acting upon such facts.

As noted above, a defendant can be held liable under Section 1983 only for deprivations

that he personally caused, either by direct action or by approval of the conduct of others

—vicarious liability cannot support a Section 1983 claim. Monell v. Dep't of Social Svcs, 436

U.S. 658, 694 (1979); Moore v. Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993) (liability under

Section 1983 must be based upon personal responsibility, not respondeat superior). Liability can

be based only on a finding that conduct causing a constitutional deprivation occurred at the

defendant's direction or with her knowledge and consent. Gentry v. Duckworth, 65 F.3d 555, 561

(7th Cir. 1995). In other words, the official sued "must know about the conduct and facilitate it,

approve it, condone it, or turn a blind eye…." Id. (quoting Jones v. City of Chicago, 856 F.2d 985,

992 (7th Cir. 1988)).

The State Defendants first argue that they were not deliberately indifferent to Perrey's

medical needs.  As noted above, in order to state a claim under the Eighth Amendment's cruel and

unusual punishment clause, a plaintiff must prove (1) that his injury is "sufficiently serious"

to deprive him "the minimal civilized measure of life's necessities" (objective component) and (2)

that the defendants in question acted with "a sufficiently culpable state of mind." (subjective

component). Farmer v. Brennan, 511 U.S. 825, 834 (1994); Johnson v. Doughty, 433 F.3d 1001,

1010 (7th Cir. 2006) citing Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Specifically, the

prisoner's medical condition must be one "that has been diagnosed by a physician mandating

treatment or one that is so obvious that even a lay person would perceive the need for a doctor's

attention." Greeno, 414 F.3d 653. Additionally, the condition must significantly affect the

prisoner's daily activities or create chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). For purposes of this motion for summary judgment only, the State Defendants concede that the plaintiff's medical condition is sufficiently serious to meet the "objective component" of the deliberate indifference analysis.

However, the law is clear that Perrey must also prove that the defendants acted with more than mere inadvertence or negligence in order to prevail on the theory of deliberate indifference. Billman v. Indiana Department of Correction, 56 F.3d 785 (7th Cir. 1995). To be liable for deliberate indifference, a prison official "must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Greeno, 414 F.3d 653 quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations omitted). Mere negligence or inadvertence is insufficient to state a claim for deliberate indifference; rather, that official "must consciously disregard that risk/ need so as to inflict cruel and unusual punishment upon the prisoner." Johnson, 433 F.3d 1010, citing Farmer, 511 U.S. at 837-838; Higgins v. Corr. Med. Servs. of Ill., Inc., 178 F.3d 508, 511 (7th Cir. 1999). Even prison officials who act within the grievance process cannot be found deliberately indifferent for investigating medical complaints and forwarding those concerns to the proper medical personnel. Greeno, 414 F.3d at 656.

The State Defendants argue that they were in no way deliberately indifferent to Perrey's medical needs. Defendants Amos, Wilson, Donahue, and Pazera do not recall receiving a complaint from Perrey about the denial of medical treatment for his Hepatitis C and defendants Hawk and Schrader referred Perrey to the appropriate staff members who had the power to conduct an investigation into his claims. Further, any and all complaints made to the State defendants regarding aspects of Perrey's medical treatment and care for Hepatitis C would have

been forwarded to the appropriate staff members for investigation. Since the State Defendants who knew about his complaint referred it to the proper staff for investigation and the remaining State Defendants did not even know about Perrey's complaint, it is clear that the State Defendants did not consciously disregard the risk posed to Perrey by his disease. Moreover, none of the State Defendants were responsible for making diagnosis, ordering treatment, or providing treatment for individual offenders housed within WCF or making medical decisions affecting those offenders infected with Hepatitis C.  As stated in the undisputed facts (and supported by the record), Correctional Medical Services has been responsible for the medical care of all offenders housed within the Indiana Department of Corrections, including Westville Correctional Facility, since September 1, 2005 and employs various medical professionals responsible for the diagnoses and treatment of offenders within the facility and has a medical director who assists in the medical decision-making process.  Therefore, this court agrees that the only evidence of record shows that the State Defendants had nothing to do with Perrey's medical care and treatment and clearly were not deliberately indifferent to the his medical needs. Thus, the State Defendants are entitled to judgment in their favor as a matter of law.

The State Defendants next argue that they were not personally involved in Perrey's medical treatment. Individuals cannot be held liable in a Section 1983 action unless they personally caused or participated in the alleged constitutional violation. Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996). Merely alleging that an individual served as a supervisor is insufficient to state a claim under § 1983. West By and Through Norris v. Waymire, 114 F.3d 646, 649 (7th Cir. 1997). Moreover, "only persons who cause or participate in the [alleged constitutional] violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). Thus, unless the sued official knew about the alleged unconstitutional conduct,

facilitated it, approved it, condoned it, or otherwise turned a blind eye to the conduct, he cannot be held liable under § 1983. <u>Gentry</u>, 65 F.3d at 561. Furthermore, liability cannot be established by a showing of "mere negligence on the part of state officials" or that an offender has sent letters to those in authority. <u>Rascon v. Hardiman</u>, 803 F.2d 269, 273 (7th Cir. 1986); <u>Crowder v. Lash</u>, 687 F.2d 996, 1006 (7th Cir. 1982).

It is clear that Perrey can present no set of facts showing that the State Defendants were personally liable for his alleged lack of treatment for Hepatitis C. The only admissible evidence in this case shows that defendants Amos, Wilson, Donahue, and Pazera do not recall receiving a complaint from Perrey about his lack of treatment for Hepatitis C and defendants Hawk and Schrader, once notified about Perrey's condition, referred him to the proper staff for investigation into his claims. Moreover, based upon the State Defendants' routines and customs, any communications directed toward them about an offender's denial of medical treatment for Hepatitis C or an offender's ability to be placed in a substance abuse program would have been forwarded to the appropriate staff member for investigation; none of the State Defendants were responsible for making individual treatment decisions for offenders housed at Westville Correctional Facility. Thus, the State Defendants lack personal involvement in the alleged constitutional violation of which Perrey complains, and cannot be held liable under Section 1983.

Lastly, the State Defendants argue that Perrey's state claims are barred by the Indiana Tort Claims Act ("ITCA"). The ITCA controls all claims brought against governmental entities and employees and provides in pertinent part:

> (c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>> (1) criminal;
>> (2) clearly outside the scope of the employee's employment;
>> (3) malicious;

(4) willful and wanton; or
(5) calculated to benefit the employee personally.

Ind. Code § 34-13-3-5. A plaintiff's complaint cannot merely allege wrongdoing in order to defeat the protections afforded under the ITCA but must assert a reasonable factual basis supporting any allegations of the aforementioned acts. Id.; Higgason v. State, 789 N.E. 2d 22, 30 (Ind. Ct. App. 2003).

Here, it is clear that Perrey has failed to plead any set of facts that support an allegation that the State Defendants acted in a manner that was criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton, or calculated to personally benefit the State Defendants. Perrey never asserts any claims against defendant Donahue in the body of his complaint and only mentions defendant Wilson in paragraph 52 by way of a conspiracy claim that was dismissed by this Court's screening order. (Dkt #1, 23; Perrey's Complaint, ¶ 52). Further, Perrey does not allege that the remaining defendants acted in a manner proscribed in Ind. Code § 34-13-3-5. As stated by the Indiana Court of Appeals, claims against individual defendants cannot proceed where a plaintiff fails to allege that the defendants acted in a way that was criminal, outside the scope of employment, malicious, willful and wanton, or for personal gain. Smith v. Ind. Dept. of Corr., 888 N.E.2d 804 (Ind. Ct. App. 2008). Perrey failed to allege such facts in his complaint and thus, to the extent such state claims exist, they are barred under the Indiana Tort Claims Act.

Before considering Perrey's response to the motion for summary judgment the court will rule upon the issues raised by the State Defendants' Motion to Strike. The State Defendants have requested that the court strike portions of Perrey's affidavit, his verified responses to the State Defendants' declarations, his statement of genuine issues, and his statement of material facts not in

dispute[4].

Local Rule 56.1(b) provides that any facts put forth to preclude summary judgment "shall be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence either already in the record or contained in an appendix…" "To defeat a summary judgment motion, however, a party may rely only on admissible evidence". <u>Lewis v. CITGO Petroleum Corp.</u>, 561 F.3d 698 (7th Cir. 2009). A scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; because "there must be evidence on which the jury could reasonably find for the [non-movant]."). <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

The State Defendants argue that Perrey's affidavit and verified responses to their declarations are inadmissible evidence and thus, cannot be used to support Perrey's Cross- Motion for Summary Judgment or his Motion in Opposition to State Defendants' Motion for Summary Judgment.

The State Defendants first assert that Perrey's affidavit contains multiple paragraphs that are hearsay and to which Perrey has no personal knowledge.  In Paragraph 8, Perrey states that "They [CMS] advised that they wouldn't do that."  As stated by the Federal Rules of Evidence, "hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 802(c). To the extent Perrey is offering these statements for the truth of the matter asserted in them, such

---

[4] As noted, due to the recent filing of this motion, Perrey has not filed a response. However, it is clear to the court that the motion must be granted and that Perrey could not possibly have an argument that would convince the court that the evidence at issue constitutes admissible evidence.  Additionally, even if the court had not granted the State Defendants' motion for leave to file the motion to strike, the court would be required to strike Perrey's evidence on its own motion, as the court cannot base an opinion on blatantly inadmissible evidence.

statements are inadmissible hearsay. Fed. R. Civ. P. 801, 802.

The State Defendants argue that all of the following paragraphs of Perrey's affidavit contain statements to which Perrey has no personal knowledge. In Paragraph 7, Perrey states: "Defendant Hawk ignored my requests for medical help for over one (1) year." In Paragraph 11, Perrey states: "Amos referred my letters to his Nursing Director, Rose Vaisvilas at Central Services and she would work with me to resolve those medical problems." In Paragraph 14, Perrey states: "IDOC is legally responsible for all offenders [sic] health and safety matters." In Paragraph 15, Perrey states: "CMS can order medical treatment for an offender, but final authority rests with the IDOC medical director, Dr. Elton Amos. Dr. Amos is responsible for ordering treatment for an offender, who needs medical treatment for Hepatitis C." In Paragraph 18, Perrey states: "These defendants [Pazera and Schrader] should be familiar with all IDOC policy directives. It is within their duties to adhere to and enforce, 'carry-out and put into practice' each and every one of these IDOC directives that are within their scope of employment." In Paragraph 19, Perrey states: "Defendant Amos implements 'carries-out or enforces' directive 3.09." In Paragraph 20, Perrey states: "All defendants implement and enforce compliance to directive 3.09, because they are administrators and their duties are to adhere to administrative procedures." In Paragraph 21, Perrey states: "Defendant Wilson is responsible for implementation or 'enforcement' of directive 3.09. As Superintendent of Westville, he is responsible for putting all IDOC policies into practice." In Paragraph 22, Perrey states: "Defendants' [sic] Hawk and Donahue are responsible for being familiar with all IDOC directives, especially directive 3.09. Donahue creates new policies when needed and revises old 'outdated' policy directives. Donahue is responsible for these policy directives and enforces compliance of them through his 'proxies', administrative staff whenever needed." In Paragraph 23, Perrey states: "All defendants' [sic] are

responsible to put these policy directives into practice 'administrative procedures', which also

entails that they enforce compliance with what these IDOC directives stipulate." In Paragraph 24,

Perrey states:"These defendants never forwarded any complaint except Hawk, 'which took over a

year', very untimely. There were NO investigations done because the defendants simply never

forwarded anything to any of the appropriate staff members for investigation. If Schrader had done

so he would have discovered

the substance abuse referral that was ordered by Prison Health Services on 3-3-2005." In

Paragraph 25, Perrey states:"Defendants' [sic] flat-out ignored my medical needs. * * * They

were put on notice in so many ways and/or forms that they have no basis to argue otherwise." In

Paragraph 26, Perrey states: "Defendants' [sic] have kept themselves intentionally unaware of

these facts concerning my complaints about not getting any medical treatment. Again and again

the defendant's [sic] were contacted about my medical problem, but instead chose not to take

action to rectify these medical concerns."

 As stated by the Federal Rules of Evidence, "a witness may not testify to a matter unless

evidence is introduced sufficient to support a finding that the witness has personal knowledge of

the matter." Fed. R. Evid. 602. While Perrey claims to have personal knowledge of the State

Defendants' job duties and intentions, he has not presented any admissible evidence supporting his

claims. The State Defendants have not testified to the aforementioned statements and Perrey has

no grounds to assume, conclude, or speculate about their job duties, responsibilities, state of mind,

or actions. Moreover, there is no evidence that Perrey has personal knowledge of the job duties or

responsibilities of the individual defendants. The majority of Perrey's statements are

argumentative and purely based on speculation on his part, and thus, do not rise to the level of

evidence necessary for purposes of these motions.

Next, the State Defendants object to Paragraph 16 of Perrey's Affidavit which states that "Defendants' [sic] Hawk, Pazera, Schrader, and Wilson should have suggested that I was 'extremely sick' from Hepatitis C and needed treatment. They may not be medical practitioners, but they are considered as laypersons and/ or knowledgeable observers."  The State Defendants argue that Paragraph 16 is Perrey's opinion which does not constitute admissible evidence. Clearly, the State Defendants are correct.

The State Defendants also contend that Perrey's Verified Responses to the State Defendants Declarations, Exhibits 7A-7F (DE 120-125) are a hodge-podge of inadmissible statements and conjecture to which the plaintiff has no personal knowledge. This court agrees that to the extent Perrey is filing a response to the State Defendants' declarations, such a filing is inappropriate and does not constitute admissible evidence for purposes of the plaintiff's motions. The responses are essentially argument interjected into the State Defendants' declarations. Rule 56 of the Federal Rules of Procedure sets forth the standard procedure by which Perrey should expound on his arguments, a copy of which was provided to Perrey in the notice attached to the State Defendants' Motion for Summary Judgment. Clearly, Perrey's responses do not constitute evidence admissible for purposes of his motions for summary judgment.

With respect to Perrey's Statement of Material Facts Not in Dispute and Statement of Genuine Issues (which are identical) the State Defendants argue that both documents contain statements to which Perrey has no personal knowledge.  In Paragraph 2, Perrey states:  "If Schrader had investigated this matter he would have discovered that this referral had been previously issued."  In Paragraph 4, Perrey states: "Defendants' [sic] Amos received several biopsy requests and several letters; Wilson received tort notice and previous 1983; Donahue received tort notice and letter; Pazera received oral complaints and summarized statements."  In

Paragraph 5, Perrey states: "… all the defendants [sic] duties encompass oversight of directive 3.09 and offenders personal wellness." In Paragraph 6, Perrey states: "…CMS can not enforce their own orders without the approval of Dr. Elton Amos at Central Medical Services at IDOC Headquarters." In Paragraph 7, Perrey states: "Amos is responsible for ordering treatment for individuals housed with-in the IDOC including those individuals housed at WCF." In Paragraph 10, Perrey states: "Defendant Schrader does oversee compliance with directive 3.09 as stated in #10 and 12, as stated in section of defendants [sic] 'Statement of Material Facts not in Dispute', 'medical referral compliance'. Defendant Pazera, on the other hand, is responsible. Pazera is the 'liaison' or go between, between IDOC and CMS respectively. That makes Pazera responsible and he also oversees compliance with directive3.09 and all other directives of the IDOC. Policy and directives are like 'laws of operation' and/ or protocol. Everybody has to adhere to them." In Paragraph 11, Perrey states: "Anyone employed under their respective administrative positions are duty bound to carry out and oversee compliance with directive 3.09 or any other IDOC directive for that matter. Defendants Hawk and Donahue both are charged with the responsibility to 'carry out' implement directive 3.09. It is with-in the defendant's scope of duty to implement and enforce compliance of directive 3.09." In Paragraph 12, Perrey states: "These defendants may allege that they aren't responsible, but the fact of the matter is their job description and their administrative titles demands a duty to adhere to, and explicitly carry-out, 'enforce or put into practice' directive 3.09 and all other directives currently in force at this time. It's [sic] with-in their scope of employment and duty."

As stated by the Federal Rules of Evidence, "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The State Defendants have not testified to the aforementioned

statements and as such, Perrey has no grounds to assume, conclude, or speculate about their job duties, responsibilities, state of mind, or actions. These statements are speculation and do not rise to the level of evidence necessary for purposes of these motions.

The State Defendants further contend that Perrey's Statement of Material Facts Not in Dispute and Statement of Genuine Issues contain unsupported opinions containing generalized statements and misstatements of previously admitted evidence. In Paragraph 8, Perrey states: "Defendants Hawk, Schrader, Pazera, and Wilson should have suggested that medical treatment be provided as they are lay-persons and/ or knowledgeable observers holding a position of administrative authority, which carries inherent responsibilities to provide and protect individual offenders who have been entrusted into their custodial care by the IDOC. By way of 'our' incarceration we can't seek out our own medical care." In Paragraph 14, Perrey states: "Defendants allege that they would not ignore any instance in which they were aware of facts that led them to believe that an offender was being denied access to proper medical treatment for Hepatitis C. The evidence already submitted thus far 'Exhibits and Facts' controvert any and all assertions by the defendants in these regards." In Paragraph 15 Perrey states: "Every defendant was contacted in some form or fashion. Exhibits submitted with the Original Complaint demonstrate contrary to what the defendants are asserting. These defendants kept themselves ignorant in order to avoid acting upon these aforementioned facts."

The State Defendants point out that Perrey's affidavit, verified responses to the State Defendants' declarations, statement of genuine issues, and statement of material facts not in dispute contain inadmissible hearsay, statements to which Perrey has no personal knowledge, and opinions which lack a basis in fact. Such documentation does not constitute evidence as anticipated under the Federal Rules of Civil Procedure.

Clearly, Perrey has not submitted any admissible evidence establishing the existence of a genuine issue of material fact. Non-moving parties "cannot rest on the pleadings alone [to defeat summary judgment], but must identify specific facts to establish that there is a genuine triable issue." <u>Donovan v. City of Milwaukee</u>, 17 F.3d 944, 947 (7th Cir. 1994). As the State Defendants point out, To the extent Perrey sets out facts and issues in dispute, they are over-generalized assumptions accusing the State Defendants of wrongdoing, wholly unsupported by admissible evidence. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (stating that a scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant].") Moreover, to the extent any Perrey's facts dispute the State Defendants' rendition of the facts, none of these disputes are material and have no bearing on whether summary judgment is appropriate in this case. <u>See</u> <u>First Nat'l Bank Co. v. Ins. Co. of North America</u>, 606 F.2d 760, 766-768 (summary judgment is not precluded by the existence of a dispute regarding non-material facts).

In his cross-motion for summary judgment against the State Defendants, Perry simply states that "Defendants were deliberately indifferent to the plaintiff's serious medical needs and were personally involved in the alleged violation of the plaintiff's rights" and that "[t]here are no genuine issues of material fact in this case and as such, the plaintiff is entitled to summary judgment as a matter of law." In support of his cross-motion, Perrey relies on the same filings that have been discussed above in relation to the State Defendants' motion to strike. As Perrey has no admissible evidence supporting his claims against the State Defendants, his cross-motion for summary judgment will be denied.

Lastly, the court will consider Perrey's "Motion for Extension of Time to Respond With

Newly Discovered Evidence". In this motion, Perrey claims that on December 3, 2009, he was informed that his former attorney had sent some possible discovery responses that have not been tendered for the Court's consideration. Perrey further claims that this "newly discovered" evidence is "outcome determinative to the case before the court and should be considered." Perrey has not submitted the "newly discovered" evidence, nor has he explained what the evidence consists of or how it is outcome determinative.

Defendant Morrow has objected to Perrey's motion for extension of time. Morrow notes that the defendants filed summary judment motions on May 8 and 11, 2009 and that, after being given three extensions of time, Perrey's response to the summary judgment motions was due on November 18, 2009. On November 2, 2009 Perrey filed numerous documents in response to the summary judgment motions, including his own cross-motion for summary judgment. On December 14, 2009, twenty-six days after his response was due, Perrey filed his current motion for extension of time. Morrow requests that the motion be denied because the summary judgment pleadings are closed.

In light of the extreme lateness of Perrey's request coupled with a complete lack of explanation as to what the "new evidence" consists, the court will deny the motion. The court further notes that considering the evidence of record, it is virtually impossible that Perrey would have obtained any evidence that would defeat the current motions for summary judgment.

<u>Conclusion</u>

On the basis of the foregoing:

1.      Morrow's motion for summary judgment [DE 85] is hereby GRANTED.

2.      The State Defendants' motion for summary judgment [DE 89] is hereby GRANTED.

3.      Perrey's cross-motion for summary judgment against Morrow [DE 114] is hereby DENIED.

4.      Perrey's cross-motion for summary judgment against the State Defendants [DE 119] is hereby DENIED.

5.      Morrow's motion to strike portions of Perrey's responses [DE 138] is hereby GRANTED.

6.      The State Defendants' motion to strike portions of Perrey's filings [DE 161] is hereby GRANTED.

7.      Perrey's motion for extension of time to respond [DE 145]is hereby DENIED.

8.      Perrey's motion to strike the State Defendants' motion for leave to file [DE 146] is hereby DEEMED MOOT.

9.      Perrey's motion to strike the State Defendants' response to his motion to strike [DE 156] is hereby DEEMED MOOT.


Entered: March 9, 2010.


                                          s/ William C.  Lee____
                                          William C. Lee, Judge
                                          United States District Court